# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RICHARD JENKS, JR.<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PAYMENT OF EXPERT TESTING**<br><br>Case No. 2:19-cv-94<br><br>Judge Clark Waddoups |

Before the court is Mr. Jenks' Motion for Payment of Expert Testing, (ECF No. 10). As explained below, the court DENIES Mr. Jenks' Motion.

## Background

On February 11, 2015, a grand jury returned a four count indictment, charging Mr. Jenks with two counts of aggravated sexual abuse of a child and two counts of sexual abuse of a minor. (2:15-cr-72, ECF No. 1.) Investigation into these charges began around October 7, 2014, when Mr. Jenks' wife had reported to the Fort Duchesne Police Department that her (then) 16-year-old daughter, (the Victim), had disclosed that her step father, Mr. Jenks, had been sexually molesting the Victim since she was 11 years old. Investigators subsequently spoke with the Victim, who told them that when Mr. Jenks sexually assaulted her, he would use a condom and then throw the condoms away in a large wood pile behind their residence.

1

On February 19, 2015, Mr. Jenks entered a plea of not guilty to the charges. (2:15-cr-72, ECF No. 3.) According to Mr. Jenks, "[t]he government first provided . . . discovery regarding [an] FBI DNA report" to his trial counsel "on or about February 26, 2015 . . . ." (ECF No. 1 at 4.) According to Mr. Jenks, "[t]he FBI report informed trial counsel that the analyst examined only five of the 19 condoms collected in October, 2014." (ECF No. 1 at 4.) Mr. Jenks alleges that one of those five condoms was not tested for DNA evidence because the FBI's expert believed "that no DNA evidence would be able to be collected from it." (*See* ECF No. 1 at 4.) Of the remaining four condoms that were "examined," Mr. Jenks alleges the following:

> Petitioner's DNA was not found on one of the tested condoms, although his [step-] daughter's DNA was found on that condom. On two other condoms, Petitioner could not be excluded as being a minor contributor with his daughter being the major contributor. On one of these condoms, the statistical significance on which the government's expert could not exclude Petitioner was extremely weak. On the fourth condom, the government expert testified that to a "reasonable degree of scientific certainty" Petitioner's DNA was located on one side of the condom and his [step-] daughter's was located on the other side.

(ECF No. 1 at 4–5.) According to Mr. Jenks, his trial counsel "never asked" "their own" "DNA expert" to conduct independent testing of any of the condoms." (ECF No. 1 at 6.)

On September 17, 2015, Mr. Jenks filed a Sealed Motion to Admit Evidence of Alleged Victim's Prior Sexual History pursuant to Rule 412 of the Federal Rules of Evidence. (2:15-cr-72, ECF No. 68.) On December 21, 2015, a hearing was held on Mr. Jenks' Motion—among other motions. (*See* 2:15-cr-72, ECF No. 99.) At this hearing, Mr. Jenks' trial counsel proffered evidence of the victim's alleged sexual activity with five other men. (*See* 2:15-cr-72, ECF No. 96 at 3.) The Government had interviewed these men about their sexual history with the victim. (*See* ECF No. 1 at 7 ("Instead, even though trial counsel obtained the names of others who had possibly engaged in sexual relations with the alleged victim, counsel failed to interview the

potential witnesses, but nevertheless provided the names to the government, *which then conducted further investigation of these potential witnesses*.") (emphasis added).)

On December 22, 2015, the court denied Mr. Jenks' Motion. The court found that "[t]hese interviews establish[ed] that only four of" the men "admitted to being actually sexually active" with the victim. (*See* 2:15-cr-72, ECF No. 96 at 3.) "Of these four, one of them stated that" he and the Victim "began having sex after the allegations in the indictment ended." (*See* 2:15-cr-72, ECF No. 96 at 3.) The other three individuals stated that they had had sexual intercourse with the Victim during the period of time alleged in the indictment, but "most of these instances of sexual conduct occurred at these individual's homes, making any evidence from these encounters unlikely to be found in the woodpile on Mr. Jenks' property." (*See* 2:15-cr-72, ECF No. 96 at 3.) Additionally, "all three men stated that they did not use condoms when they had sex with" the Victim. (*See* 2:15-cr-72, ECF No. 96 at 3.) For these reasons, the court found that the Victim's "activity with these individuals could not account for the physical evidence recovered from the woodpile . . . ." (*See* 2:15-cr-72, ECF No. 96 at 4.)

According to Mr. Jenks, "[t]he government then obtained DNA samples from" the men they had interviewed, "and compared them to the results obtained from the four condoms." (*See* ECF No. 1 at 7 n. 2.) On December 30, 2015, an FBI Laboratory Report was completed. (ECF No. 1-6 at 2.) This report appears to have concluded that the other men's DNA was not found on any of the four condoms the Government had previously tested. (*See* ECF No. 1-6 at 3 ("A . . . are excluded as potential contributors of the DNA obtained from items 3(1), 5(2), 7(1), 7(2), and 10(1).").)

A jury trial was held in January of 2016. (*See* 2:15-cr-72, ECF No. 116.) Mr. Jenks "was convicted on Counts 1, 3, and 4 of the Indictment. (ECF No. 1 at 2.) "Sentencing was held on June 17, 2016, and judgment was entered on June 24, 2016." (ECF No. 1 at 1.)

On February 11, 2019, Mr. Jenks filed a Motion to Vacate and Set Aside Conviction and Sentence Under 28 U.S.C. Section 2255. (ECF No. 1.) In this Motion, Mr. Jenks alleges that his trial counsel was ineffective for four reasons. Relevant here, he alleges that his trial counsel provided ineffective assistance by failing to properly investigate the DNA evidence in a timely manner and by failing to properly analyze the government's DNA results. (ECF No. 1 at 3–4.) More specifically, Mr. Jenks argues that his trial counsel's "failure to test the remaining 14 condoms was error in two aspects." (ECF No. 1 at 7.)

First, he argues that "at the hearing on the Federal Rules of Evidence, Rule 412 motion, trial counsel admitted that they had not tested the remaining fourteen condoms and thus could not argue that Petitioner's DNA was not on those condoms or that some other male's DNA along with that of the alleged victim was on those condoms." (ECF No. 1 at 8.) Alternatively, Mr. Jenks argues that "the testing of the other condoms might have uncovered additional evidence against [Mr. Jenks], which would have facilitated case settlement. But as a result of the [trial] counsel's failure to investigate the DNA evidence in the case, the [trial] attorneys had no basis on which to encourage [Mr. Jenks] to settle the case." (ECF No. 1 at 8.)

On April 3, 2019, the Government filed an Opposition to Mr. Jenks' Motion. (ECF No. 9.) The Government argued, in relevant part:

> Jenks's DNA was conclusively found on one condom and could not be excluded from two additional condoms. Testing any of the untested condoms could have resulted in additional DNA matches, which could have given rise to a superseding indictment with added counts. Or it could have resulted in no additional matches, which would not have negated the conclusive match to Jenks. Given the scientific certainty of the one DNA match, no reasonable jury would have been persuaded

4

> by negative results on the untested condoms.
>
> Jenks also argues that the condoms might have yielded DNA from other male suspects. Even so, such evidence would not have been admissible at trial. Rule 412(a) specifically prohibits evidence offered to prove that a victim engaged in other sexual behavior. The exception in Rule 412(b)(1)(A) would not have applied because DNA on other condoms could not disprove Jenks's DNA match. Besides, other male DNA on the untested condoms would not disprove Jenks's DNA match.

(ECF No. 9 at 6.)

In his Motion for Payment of Expert Testing, Mr. Jenks, through counsel, argues that "[g]ood cause exists" for the court to grant funds "for the payment of expert testing" because Mr. Jenks is "indigent and the testing is necessary to prove prejudice from his trial counsel's failure to test the evidence at trial." (ECF No. 10 at 2.) In his conclusion, Mr. Jenks "requests that this Court grant an amount not to exceed $ 6950 for the retention of the Serological Research Institute to conduct an initial examination of the 14 items . . . ." (ECF No. 10 at 5.)

## Legal Standard

Rule 6

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796–97, 138 L. Ed. 2d 97 (1997). Rule 6(a) of the Rules Governing § 2255 Proceedings provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil procedure . . . ." "In the context of a proceeding under 28 U.S.C. § 2254," the Tenth Circuit has "held that good cause is established where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *United States v. Moya-Breton*, 439 F. App'x 711, 715–16 (10th Cir. 2011) (internal quotation marks omitted) (citations

omitted). The Tenth Circuit, in an unpublished decision, has applied that standard to Section 2255 proceedings. *See id*. at 716. ("We see no reason to apply a different standard here.").

Analysis

In his Motion, Mr. Jenks moves the court to grant funds for the payment of expert testing. Mr. Jenks is putting the cart before the horse. Before addressing whether Mr. Jenks is entitled to funds for that testing, the court must first address the preliminary question of whether he is entitled to that expert discovery at all.

As discussed above, under Rule 6(a), a "judge may, *for good cause*, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure . . . ." Rule 6(a) of the Rules Governing § 2255 Proceedings (emphasis added). Mr. Jenks does not specifically address Rule 6(a)'s good cause requirement. On this basis alone, the court would deny Mr. Jenks' request for funds for expert testing. The court nevertheless addresses whether, based on the record available to this court, he has satisfied Rule 6(a)'s good cause requirement.

"Before addressing whether" Mr. Jenks "is entitled to discovery," the court must "identify the 'essential elements'" of his claim. *Bracy*, 520 U.S. at 904; *see also Peel v. United States*, No. 06-CR-30049-WDS, 2013 WL 120190, at *3 (S.D. Ill. Jan. 9, 2013). Mr. Jenks' "claims are all premised on ineffective assistance of counsel, so he ultimately must establish both that his [trial] counsels' representation fell below an objective standard of reasonableness and that he was prejudiced as a result." *Peel*, 2013 WL 120190 at *3. "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011) (bold added). Accordingly, to be entitled

6

to discovery related to DNA testing, Mr. Jenks must make "specific allegations that show reason to believe that he may, if the facts are fully developed, be able to demonstrate that his counsels' representation fell below an objective standard of reasonableness *and* that he was prejudiced as a result." *Peel*, 2013 WL 120190 at *3. Mr. Jenks does not meet that standard.

Additional testing on the fourteen condoms could lead to a combination of up to at least three possible outcomes, none of which would support a different outcome at trial.

First, additional testing could have resulted in DNA of other men being found on the condoms. But this outcome would not have proven that Mr. Jenks did not commit the crime for which he was convicted. The Victim testified in specific detail at trial about Mr. Jenks' repeated sexual abuse of her which was corroborated by the DNA testing. The discovery of another man's DNA on one of the fourteen condoms could not have changed the fact that Mr. Jenks' "DNA was located on one side of [a] condom and his [step-] daughter's was located on the other side." (ECF No. 1 at 5.) Even if this first possible outcome were fully developed, the court has no reason to believe that the result of the trial would have been different. Mr. Jenks has therefore not provided a reason to believe that he was prejudiced by his trial counsel's decision to not test the fourteen additional condoms.

Second, additional testing could have resulted in no additional DNA matches. Again, this could not have changed the fact that Mr. Jenks' "DNA was located on one side of [a] condom and his [step-] daughter's was located on the other side." (ECF No. 1 at 5.) Even if this second possible outcome were fully developed, the court has no reason to believe that the result of the trial would have been different. Mr. Jenks has therefore not provided a reason to believe that he was prejudiced by his trial counsel's decision to not test the fourteen additional condoms.

Third, additional testing could have resulted in further DNA matches connecting both Mr. Jenks and the Victim. Mr. Jenks argues that this outcome "would have facilitated case settlement." (ECF No. 1 at 8.) Mr. Jenks argues that "[i]f more condoms connected [him] with his [step-] daughter, a reasonably competent attorney would have properly advised [him] about the strength of the evidence against him and urged [him] to accept a beneficial settlement in the face of the stronger evidence." (ECF No. 1 at 8.) Here, Mr. Jenks' theory is that he was prejudiced by "[h]aving to stand trial, [and] not choosing to waive it . . . ." *Lafler v. Cooper*, 566 U.S. 156, 163–64, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012). "In these circumstances a [petitioner] must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. Even if this third possible outcome were fully developed (that additional testing provides further evidence of Mr. Jenks' guilt), the court has no reason to believe that Mr. Jenks would have pled guilty because the Government would have almost certainly withdrawn the (alleged) plea offer upon discovering further evidence of Mr. Jenks' guilt.

Based on the foregoing, Mr. Jenks has not demonstrated good cause under Rule 6(a) for discovery relating to DNA testing.

Conclusion

As discussed above, because Mr. Jenks has not demonstrated good cause for the expert testing he requests, there is no need for this court to grant funds for that testing. Mr. Jenks' Motion, (ECF No. 10) is DENIED.

Dated this 2nd day of July, 2019.

BY THE COURT:

_____
CLARK WADDOUPS
United States District Judge