# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RICHARD JENKS, JR.<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO VACATE AND SET ASIDE CONVICTIONS AND SENTENCE**<br><br><br>Case No. 2:19-cv-94<br><br>Judge Clark Waddoups |

Before the court is Mr. Jenks' Motion to Vacate and Set Aside Convictions and Sentence Under 28 U.S.C. § 2255. (ECF No. 1). For the reasons stated below, the court DENIES Mr. Jenks' Motion.

<u>Background</u>

On February 11, 2015, a grand jury returned a four count indictment, charging Mr. Jenks with two counts of aggravated sexual abuse of a child and two counts of sexual abuse of a minor. (2:15-cr-72, ECF No. 1.) Investigation into these charges began around October 7, 2014, when Mr. Jenks' wife had reported to the Fort Duchesne Police Department that her (then) 16-year-old daughter, (the Victim), had disclosed that her step father, Mr. Jenks, had been sexually molesting the Victim since she was 11 years old. Investigators subsequently spoke with the Victim, who

told them that when Mr. Jenks sexually assaulted her, he would use a condom and then throw the condoms away in a large wood pile behind their residence.

On February 19, 2015, Mr. Jenks entered a plea of not guilty to the charges. (2:15-cr-72, ECF No. 3.) At this hearing, the court explained Mr. Jenks' rights and penalties for the charges. (*See* 2:15-cr-72, ECF No. 3.)

According to Mr. Jenks, "[t]he government first provided . . . discovery regarding [an] FBI DNA report" to his trial counsel "on or about February 26, 2015 . . . ." (ECF No. 1 at 4.) According to Mr. Jenks, "[t]he FBI report informed trial counsel that the analyst examined only five of the 19 condoms collected in October, 2014." (ECF No. 1 at 4.) Mr. Jenks alleges that one of those five condoms was not tested for DNA evidence because the FBI's expert believed "that no DNA evidence would be able to be collected from it." (*See* ECF No. 1 at 4.) Of the remaining four condoms that were "examined," Mr. Jenks alleges the following:

> Petitioner's DNA was not found on one of the tested condoms, although his [step-] daughter's DNA was found on that condom. On two other condoms, Petitioner could not be excluded as being a minor contributor with his daughter being the major contributor. On one of these condoms, the statistical significance on which the government's expert could not exclude Petitioner was extremely weak. On the fourth condom, the government expert testified that to a "reasonable degree of scientific certainty" Petitioner's DNA was located on one side of the condom and his [step-] daughter's was located on the other side.

(ECF No. 1 at 4–5.) According to Mr. Jenks, his trial counsel "never asked" "their own" "DNA expert" to conduct independent testing of any of the condoms." (ECF No. 1 at 6.)

On July 29, 2015, the assigned prosecutor to the case sent an email to Mr. Jenks' trial counsel seeking "to broach the subject of a settlement." (ECF No. 1-7 at 2.) The email mentioned a previously suggested "possibility of a 10 year deal" and the possibility of "obtain[ing] approval to offer something closer to 8 years." (ECF No. 1-7 at 2.) But the email did not specify to which

counts Mr. Jenks would have to plead guilty. Nor did the prosecutor refer to the email itself as an "offer." (*See* ECF No. 1-7 at 2.)

On September 17, 2015, Mr. Jenks filed a Sealed Motion to Admit Evidence of Alleged Victim's Prior Sexual History pursuant to Rule 412 of the Federal Rules of Evidence. (2:15-cr-72, ECF No. 68.)

On December 21, 2015, a hearing was held on Mr. Jenks' Motion—among other motions. (*See* 2:15-cr-72, ECF No. 99.) At this hearing, Mr. Jenks' trial counsel proffered evidence of the victim's alleged sexual activity with five other men. (*See* 2:15-cr-72, ECF No. 96 at 3.) The Government had interviewed these men about their sexual history with the victim. (*See* ECF No. 1 at 7 ("Instead, even though trial counsel obtained the names of others who had possibly engaged in sexual relations with the alleged victim, counsel failed to interview the potential witnesses, but nevertheless provided the names to the government, *which then conducted further investigation of these potential witnesses*.") (emphasis added).)

On December 22, 2015, the court denied Mr. Jenks' Motion. The court found that "[t]hese interviews establish[ed] that only four of" the men "admitted to being actually sexually active" with the victim. (*See* 2:15-cr-72, ECF No. 96 at 3.) "Of these four, one of them stated that" he and the Victim "began having sex after the allegations in the indictment ended." (*See* 2:15-cr-72, ECF No. 96 at 3.) The other three individuals stated that they had had sexual intercourse with the Victim during the period of time alleged in the indictment, but "most of these instances of sexual conduct occurred at these individual's homes, making any evidence from these encounters unlikely to be found in the woodpile on Mr. Jenks' property." (*See* 2:15-cr-72, ECF No. 96 at 3.) Additionally, "all three men stated that they did not use condoms when they had sex with" the Victim. (*See* 2:15-cr-72, ECF No. 96 at 3.) For these reasons, the court

found that the Victim's "activity with these individuals could not account for the physical evidence recovered from the woodpile . . . ." (*See* 2:15-cr-72, ECF No. 96 at 4.)

According to Mr. Jenks, "[t]he government then obtained DNA samples from" the men they had interviewed, "and compared them to the results obtained from the four condoms." (*See* ECF No. 1 at 7 n. 2.) On December 30, 2015, a FBI Laboratory Report was completed. (ECF No. 1-6 at 2.) This report appears to have concluded that the other men's DNA was not found on any of the four condoms the Government had previously tested. (*See* ECF No. 1-6 at 3 (The named individuals "are excluded as potential contributors of the DNA obtained from items 3(1), 5(2), 7(1), 7(2), and 10(1).").)

A jury trial was held in January of 2016. (*See* 2:15-cr-72, ECF No. 116.) At this trial, the Victim testified in detail about Mr. Jenks' repeated sexual abuse of her which was corroborated by DNA testing. Mr. Jenks was convicted on Counts 1, 3, and 4 of the Indictment. (ECF No. 1 at 2.) "Sentencing was held on June 17, 2016, and judgment was entered on June 24, 2016." (ECF No. 1 at 1.)

On February 11, 2019, Mr. Jenks filed a Motion to Vacate and Set Aside Conviction and Sentence Under 28 U.S.C. Section 2255. (ECF No. 1.) In this Motion, Mr. Jenks alleges that his trial counsel was ineffective for four reasons.

First, he argues that "trial counsel failed to provide petitioner with effective assistance of counsel as guaranteed by the sixth amendment by not investigating the physical evidence." (ECF No. 1 at 3). Second, he argues that "trial counsel provided ineffective assistance during the plea negotiation stage of the proceedings." (ECF No. 1 at 9). Third, he argues that "trial counsel denied petitioner his right to the effective assistance of counsel by introducing evidence against their own client." (ECF No. 1 at 13). Fourth, he argues that "trial counsel provided ineffective

assistance by having petitioner sign a lengthy stipulation regarding the admission of physical evidence." (ECF No. 1 at 16).

On April 3, 2019, the Government filed an Opposition to Mr. Jenks' Motion. (ECF No. 9.) On August 19, 2019, Mr. Jenks filed a reply. (ECF No. 18 at 1.)

<u>Legal Standard</u>

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that the sentence was imposed in violation of the Constitution. *See* 28 U.S.C. § 2255(a). "Because the Sixth Amendment provides criminal defendants with the right to *effective* assistance of counsel . . . inadequate representation is a basis for relief under section 2255." *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011) (emphasis in original) (citations omitted).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "With respect to a claim that counsel's ineffective assistance led to the rejection of a plea offer that, properly informed, would have been accepted, a petitioner seeking a hearing must proffer arguably credible evidence of a *prima facie* case that, but for counsel's improper advice, the petitioner would have accepted the plea offer." *Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009). "[C]onclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing," *United States v. Hershberger*, 940 F.2d 671 (10th Cir. 1991) (internal quotation marks omitted) (citations omitted).

<u>Analysis</u>

As discussed above, all four of Mr. Jenks' grounds for relief are for ineffective assistance of counsel. (*See* ECF No. 1 at 3; 9; 13; & 16.) Mr. Jenks "'faces a heavy burden' to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (citation omitted). To succeed on his "ineffective assistance of counsel claim under § 2255," Mr. Jenks "has the twofold burden of establishing that (1) defense counsel's performance was deficient, *i.e.,* counsel's 'representation fell below an objective standard of reasonableness' as measured by 'prevailing professional norms,' and (2) defendant was prejudiced thereby, *i.e.,* 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984)). "Courts are free to address these two prongs in any order, and failure under either is dispositive." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (citation omitted).

Mr. Jenks was represented by an attorney when he submitted his Section 2255 petition. (*See* ECF No. 1 at 1; 18.) He was also represented by counsel when he submitted his reply. (*See* ECF No. 18 at 1; 19.) Because Mr. Jenks is represented by counsel, this court does not construe his pleadings liberally, as it would be required to do if he were pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The court addresses Mr. Jenks' arguments in turn.

I.    <u>Mr. Jenks Is Not Entitled to a Hearing on His First Ground For Relief</u>

Mr. Jenks argues that "[t]rial counsel provided ineffective assistance of counsel by failing to properly investigate the DNA evidence in a timely manner and by failing to properly analyze the government's DNA results." (ECF No. 1 at 3–4.) Mr. Jenks argues that "[t]he result of" his

trial counsel's "failure to investigate prejudiced" him for at least three distinct reasons. (*See* ECF No. 1 at 9). First, he argues that if he had "been advised in a timely manner of the strength of the evidence against him," he "would have settled the case by accepting one of the government's plea offers." (ECF No. 1 at 9). Second, he argues that "had trial counsel tested the remaining 14 condoms, there is a reasonable probability the court would have admitted the evidence pursuant to rule 412 which may well have resulted in a different outcome at trial." (ECF No. 1 at 9). Third, he argues that "no reasonable trial counsel would have called his own expert merely to tell the jury that he agreed with the government's witness in every regard, thus bolstering the prosecution's case." (ECF No. 1 at 9).

Thus, in his first ground for relief, Mr. Jenks argues that his trial counsel's failure to investigate prejudiced him both before trial and during trial. Mr. Jenks argues that, absent these errors, he would have accepted a plea offer and not gone to trial. And he also argues that there is a reasonable probability that the outcome of the trial would have been different absent these alleged errors. The court addresses (A) his arguments related to the outcome of his trial and then (B) his argument that he would have pled guilty if his counsel had discovered further evidence of his guilt.

A. <u>Mr. Jenks Cannot Show a Reasonable Probability that, Absent His Trial Counsel's Alleged Errors, the Jury Would Have Had a Reasonable Doubt Respecting His Guilt</u>

"[T]o show that the outcome of his trial was prejudiced by counsel's" alleged errors, Mr. Jenks "must show that those 'errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687)). "To establish prejudice, he must demonstrate 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "a probability

7

sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. As discussed above, Mr. Jenks argues that his trial counsel erred by (1) failing to test the remaining 14 condoms and (2) calling the defense expert.

1. Trial Counsel's Decision to Not Test the Fourteen Remaining Condoms Did Not Prejudice Mr. Jenks At Trial

Mr. Jenks argues that if his "trial counsel tested the remaining 14 condoms, there is a reasonable probability the court would have admitted the evidence pursuant to rule 412 which may well have resulted in a different outcome at trial." (ECF No. 1 at 9). Here, Mr. Jenks' argument involves two steps. First, he must show a reasonable probability that the court's ruling on his Rule 412 Motion would have been different but for his trial counsel's alleged errors. If he can meet his burden at this step, he must then demonstrate a reasonable probability that, absent the errors, the jury would have had a reasonable doubt respecting his guilt. As explained below, his argument fails at the first step. But even if he were able to reach the second step, his argument would still fail because no reasonable jury would have had any reasonable doubt respecting his guilt because the evidence of his guilt was overwhelming.

As discussed above, Mr. Jenks' counsel filed a Motion pursuant to Rule 412 "to establish that someone other than the defendant was the source of the physical evidence in this matter . . . ." (2:15-cr-72, ECF No. 68 at 1.) In this court's order denying Mr. Jenk's Rule 412 Motion, the court noted that it "may admit evidence of *'specific instances* of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence.'" (2:15-cr-72, ECF No. 96 a 2 (quoting Fed. R. Evid. 412(b)(1)(A) (emphasis in original)). The court denied Mr. Jenks' Motions for two alternative reasons. (*See* 2:15-cr-72, ECF No. 96 at 3.) The first was that Mr. Jenks' trial counsel had failed to point to specific

instances of the Victim's conduct.[1] The second reason the court denied Mr. Jenks' Rule 412 motion was that "the evidence offered at the hearing," the "interviews with five men alleged to have been sexual partners of" the Victim "would not [have] be[en] probative of the source of the physical evidence in" the case. (ECF No. 96 at 3.) This is because of the three men who admitted to having had sex with the Victim during the relevant period, none stated that they used condoms when they had sex with her.

As this court held in 2015, the Victim's "activity with these individuals could not account for the physical evidence recovered from the woodpile." (2:15-cr-72, ECF No. 96 at 6.) In his 2255 Motion, Mr. Jenks fails to provide any argument demonstrating a reasonable probability that, but for his counsel's alleged errors, he would have been able to show specific instances of the Victim's sexual behavior that would have satisfied Rule 412(b)(1)(A). He therefore fails at the first step.

But even if he could meet his burden of establishing that his Rule 412 Motion would have been granted, Mr. Jenks cannot show a reasonable probability that, absent his counsel's alleged errors, "the factfinder would have had a reasonable doubt respecting guilt." *Hanson*, 797 F.3d at 826 (citation omitted). As this court previously noted, "[t]he Victim testified in specific detail at trial about Mr. Jenks' repeated sexual abuse of her which was corroborated by . . . DNA testing." (ECF No. 13 at 7). The court rejects any argument that Mr. Jenks prejudiced at trial by his counsel's failure to test the remaining 14 condoms. As the court previously reasoned, even if additional testing resulted in DNA of other men being found on the condoms, this "would not have proven that Mr. Jenks did not commit the crime for which he was convicted." (ECF No. 13

---

[1] (*See* 2:15-cr-72, ECF No. 96 at 3 ("Mr. Jenks does not seek to offer specific instances of prior sexual conduct. Rather, he asks the court to admit evidence that D.J. had prior sexual activity with other men. The failure to identify specific instances of conduct precludes application of the other physical evidence exception to Rule 412(b)(1)(A).").

at 7). Again, even if this outcome were fully developed, "the court has no reason to believe that the result of the trial would have been different." (ECF No. 13 at 7). The same reasoning applies if "additional testing could have resulted in no additional DNA matches." (ECF No. 13 at 7).

For these reasons, the court holds that Mr. Jenks cannot demonstrate that his trial counsel's failure to test the fourteen untested condoms prejudiced him at trial.

2. Mr. Jenks Cannot Demonstrate that His Trial Counsel's Decision to Call the Defense's Expert Witness Sufficiently Prejudiced Him

Mr. Jenks argues that "no reasonable trial counsel would have called his own expert merely to tell the jury that he agreed with the government's witness in every regard, thus bolstering the prosecution's case." (ECF No. 1 at 9.) Here, Mr. Jenks argues that "[t]he defense expert testified on direct that he agreed with all the results of the FBI report," "thereby supporting the government's case against" Mr. Jenks. (ECF No. 1 at 6–7.)

"In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Id*. At 112. Mr. Jenks makes no argument that, absent his counsel's errors regarding the defense expert, the outcome of his trial would have been different. Mr. Jenks cannot demonstrate that his trial counsel's alleged error related to the defense expert prejudiced him at trial.

B. Mr. Jenks' Trial Counsel's Decision Not to Test the Additional Fourteen Condoms Was Reasonable Because that Testing Would Have Likely Been Harmful to His Defense

Here, Mr. Jenks argues that "testing of the other condoms might have uncovered additional evidence against" him, "which would have facilitated case settlement." (ECF No. 1 at 8.) He further argues that "as a result of the counsel's failure to investigate the DNA evidence in the case, the attorneys had no basis on which to encourage Petitioner to settle the case." (ECF No. 1 at 8.)

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court "clarified that the Sixth Amendment right to effective assistance of counsel extends specifically 'to the negotiation and consideration of plea offers that lapse or are rejected.'" *Osley v. United States*, 751 F.3d 1214, 1221 (11th Cir. 2014). In reaching its holding, the Supreme Court in *Lafler* confirmed that the two-part *Strickland* test applies to ineffective assistance claims based on rejected plea offers. *See Lafler*, 566 U.S. at 162–63. But the Court did not need to examine the deficient performance part of the *Strickland* test because it was undisputed that the Section 2254 petitioner's trial counsel's advice to reject a plea offer was deficient. *See Lafler*, 566 U.S. at 163 ("In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial. In light of this concession, it is unnecessary for this Court to explore the issue.").

Unlike in *Lafler*, the parties here do not agree on the deficient performance prong of the *Strickland* test. The Government argues that Mr. Jenks' trial counsel's decision not to test the condoms was "objectively reasonable under the circumstances." (ECF No. 9 at 7.)

To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. This court's scrutiny of counsel's performance is highly deferential. This court "must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Relevant here, "choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 691. One factor "affecting whether it is reasonable not to investigate" is "whether counsel has 'reason to believe that pursuing certain investigations would be fruitless or even harmful . . . .'" *Coleman v. Thaler*, 716 F.3d 895, 903 (5th Cir. 2013).

Applying a strong presumption that Mr. Jenks' trial counsel's conduct falls within the wide range of reasonable professional assistance, the court holds that Mr. Jenks' trial counsel's decision not to conduct testing on the fourteen remaining condoms was reasonable. Mr. Jenks himself acknowledges the possibility that additional test may have resulted in further evidence of his guilt. (*See* ECF No. 1 at 8 ("the testing of other condoms might have uncovered additional evidence against Petitioner . . . ."). Mr. Jenks cannot meet his burden of demonstrating that his counsel's performance was deficient because his counsel had good reason to believe that further testing would have been harmful to Mr. Jenks' defense. S*ee Harrington v. Richter*, 562 U.S. 86, 108 (2011) ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense.").

To summarize, files, records, and briefing on Mr. Jenks' Section 2255 Motion conclusively show that his trial counsel's decision not to test the fourteen condoms did not prejudice him at trial. And they conclusively show that his trial counsel's decision to not test the condoms was a reasonable decision. Thus, Mr. Jenks is not entitled to a hearing on these issues.

II.     <u>Mr. Jenks Is Not Entitled to a Hearing on His Second Ground For Relief</u>

Mr. Jenks argues that he "was denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel did not properly advise him of the consequences of rejecting the plea offers from the government and as the result of this improper advice, [he] rejected the plea offers and proceeded to trial." (ECF No. 1 at 9–10.) Mr. Jenks alleges that the Government made at least three different plea offers to him in 2015. (*See* ECF No. 1 at 10–11.)

First, he alleges that "[h]is attorneys told him in May, 2015 that the government had offered a plea to a fifteen year sentence." (ECF No. 1 at 10.) But Mr. Jenks does not allege any specific details about this purported plea offer. He does not state to which count he would have pled guilty. Nor does he allege whether the offer would have required the plea be pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure.

Second, he alleges that "[i]n June, 2015, his attorneys informed him that the prosecution had reduced their offer to a ten-year deal." (ECF No. 1 at 10.) He further alleges that "[h]is attorneys did not discuss the specific charges or applicable sentencing guidelines with him at that time . . . ." (ECF No. 1 at 10.)

Third, he alleges that "[i]n September, 2015, his attorneys informed him that the prosecution made an eight year offer to settle the case." (ECF No. 1 at 11.) Here, he relies on a July 29, 2015 email sent from the assigned prosecutor to his defense counsel. (*See* ECF No. 1 at 11.) That email provides, in relevant part:

> Rudy and Abby,
>
> Could you tell me whether you think there is any chance of this trial going forward on 9/28? It's going to require a lot of time and attention in order for me to be prepared to try it on that date.
>
> Also, I would like to broach the subject of a settlement. If I recall correctly, I previously mentioned to Abby the possibility of a 10-year deal. Having re-

evaluated the case, I believe I could probably obtain approval to offer something closer to 8 years. Let's discuss at your leisure.

J. Drew Yeates
Assistant U.S. Attorney
District of Utah

(ECF No. 1-7 at 2.)

In response to Mr. Jenks' second ground of ineffective assistance, the Government argues that "[t]he premise of Jenks' argument is flawed" because "[t]he United States never extended a plea offer to [him]." (ECF No. 9 at 7.) Rather, the Government argues that "the parties discussed the mere prospect of a possible plea offer." (ECF No. 9 at 7–8.)

In reply, Mr. Jenks argues that the court "should reject" the Government's arguments "at this stage of the proceedings." Mr. Jenks argues that "there is no absolute requirement that a formal plea offer be made during the negotiation stage for a defendant to prove ineffective assistance of counsel during the plea stage." (ECF No. 1 at 8–9.)

As discussed above, in *Lafler*, the Supreme Court "clarified that the Sixth Amendment right to effective assistance of counsel extends specifically 'to the negotiation and consideration of plea **offers** that lapse or are rejected.'" *Osley v. United States*, 751 F.3d 1214, 1221 (11th Cir. 2014) (bold added). "If a plea bargain has been **offered**, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168 (bold added). But if "no plea offer is made," any ineffective assistance claim based on the Sixth Amendment right established by *Lafler* "simply [cannot] not arise." *See Lafler*, 566 U.S. at 168. This is because criminal defendants have "no right to be offered a plea . . . nor a federal right that the judge accept it." *Missouri v. Frye*, 566 U.S. 134, 148 (2012).

If the Government did not make Mr. Jenks a plea offer, his second ground for relief necessarily fails. The question for this court is whether Mr. Jenks has presented credible

evidence that the Government did in fact offer him a plea deal. If he has not, he is not entitled to a hearing on this issue. *See Levy v. United States*, No. 11 CR. 62 (PAC), 2017 WL 1383762, at *3 (S.D.N.Y. Apr. 13, 2017).[2] Resolution of this question first requires this court to determine what types of prosecutor communications are sufficient to constitute an "offer" of a plea agreement under *Lafler*.

The parties point to no binding authority that defines the types of prosecutor communications that are sufficient to constitute an "offer" of a plea agreement under *Lafler*. But the Supreme Court has provided that "[a]lthough the analogy may not hold in all respects, plea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009). "In order for a contractual offer to exist, it must contain sufficiently definite terms to enable a fact finder to interpret and apply them." *Mavashev v. United States*, No. 11-CV-3724 DLI, 2015 WL 1508313, at *10 (E.D.N.Y. Mar. 31, 2015).

This case does not require the court to determine each and every term a prosecutor communication must contain to constitute a plea offer under *Lafler*. It is enough for this court to hold that the prosecutor's July 2015 email in this case was not a plea offer under *Lafler* because it lacked an essential term—to which charge would Mr. Jenks acknowledge guilt? Absent this term, "no plea offer [was] made." *Lafler*, 566 U.S. at 168. If no plea offer was made, Mr. Jenks' second ground for ineffective assistance of counsel fails.

---

[2] "To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim. In the context of a rejected plea offer, the defendant must proffer arguably credible evidence of a *prima facie* case that, but for counsel's improper advice, the petitioner would have accepted the plea offer." (citations omitted) (internal quotation marks omitted).

Mr. Jenks argues that he has presented enough evidence to at least warrant a hearing to determine whether the Government made him a plea offer. (*See* ECF No. 18 at 8 ("the full nature of the plea negotiations between defense and government counsel should be fully developed at an evidentiary hearing." (ECF No. 18 at 8.) In support of his argument, Mr. Jenks relies on an opinion from 2013 that the undersigned authored. (*See* ECF No. 18 at 9 ("In *Polatis*, the precise nature of the offer was fully developed at an evidentiary hearing, the very hearing both parties acknowledge should be held in this case.").) The 2013 case Mr. Jenks relies on is *United States v. Polatis*, No. 2:10-CR-0364, 2013 WL 1149842, at *3 (D. Utah Mar. 19, 2013). As explained below, unlike Mr. Jenks, the criminal defendant in *Polatis* demonstrated that a hearing was warranted.

In *Polatis*, this court granted a criminal defendant's "Motion to Compel the United States to Reoffer the Plea Agreement Previously Rejected by the Defendant Due to Ineffective Assistance of Counsel." *United States v. Polatis*, No. 2:10-CR-0364, 2013 WL 1149842, at *12 (D. Utah Mar. 19, 2013). In his motion to compel, the criminal defendant in *Polatis* requested an evidentiary hearing. (*See* 2:10-cr-364, ECF No. 324.) And in his motion to compel, the criminal defendant alleged specific, non-conclusory facts that the Government had in fact made him a plea offer. (*See* 2:10-cr-364, ECF No. 311 at 3–5.) Importantly, the criminal defendant alleged two critical terms of the offer—which counts he would plead guilty to and the range of possible punishment for pleading guilty to those counts. (*See* 2:10-cr-364, ECF No. 311 at 4–5 ("On December 8, 2012, Mr. Leigh received another email from the United States amending the offer in the form of an email to require a plea to two murder-for-hire counts instead of one . . . Mr. Polatis states he was aware the sentencing range for the offer was 151-188 months, and that it would require him to plead to two of the murder-for-hire counts.").

After receiving the criminal defendant's motion that included specific, non-conclusory allegations of a plea offer, this court held an evidentiary hearing. (*See* 2:10-cr-364, ECF No. 326). At that evidentiary hearing, the email of the prosecutor's offer was introduced as an exhibit. (*See* 2:10-cr-364, ECF No. 327-1.) The plea offer provided, in relevant part:

> At the present time, we are looking to supersede tomorrow.... That guideline range is 324–405 months, criminal history category I.
>
> I would be willing to go to the screening committee with an agreement whereby *Mr. Polatis would plead guilty to only one count of murder-for-hire and we would agree that the judge would sentence him somewhere in the 151–188 month range.* (We both could argue for whatever sentence within that range we want the judge to give.) ...
>
> While I realize this is a significant sentence which will be difficult for Mr. Polatis to accept, I believe that if he were to go to trial, we would prevail and he could well be facing a life sentence, depending on how the issue of multiple counts is handled. And if he were to plead, he would receive credit for time served in this case and could receive 54 days off his sentence each year for good time.
>
> As I mentioned, if Mr. Polatis is amenable, I would be willing to present this *offer* to our screening committee. I need to let you know that the screening committee will have the final say on the deal-I do not have that authority.

*United States v. Polatis*, No. 2:10-CR-0364, 2013 WL 1149842, at *1–2 (D. Utah Mar. 19, 2013) (emphases added). The prosecutor in that case later amended the offer. *See id.* at *3 ("On December 8, 2010, Ms. Travis sent a follow-up email explaining that she had made a mistake in her email the previous day because Defendant would need to plead to two counts of murder-for-hire and not one."). After defense counsel filed a motion to dismiss, the prosecutor in that case sent an email to defense counsel stating that because the defendant's "intentions have been to litigate this case with the United States rather than negotiate . . . the [Government's] **offer** is hereby withdrawn." *United States v. Polatis*, No. 2:10-CR-0364, 2013 WL 1149842, at *3 (D. Utah Mar. 19, 2013).

Mr. Jenks argues that "the Government's brief implying that no offers were made is not evidence." (ECF No. 18 at 8.) Mr. Jenks is correct that on a Section 2255 petition, a "district court cannot simply credit the government's [factual assertions] and discredit the defendant's." *See United States v. Hershberger*, 940 F.2d 671 (10th Cir. 1991). But it is also true that "[c]onclusory allegations unsupported by specifics are insufficient to require a court to grant an evidentiary hearing, as are contentions that in the face of the record are wholly incredible . . . ." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1211 (10th Cir. 1989) (overruled on other grounds as stated in *Phillips v. Ferguson*, 182 F.3d 769, 772-73 (10th Cir. 1999)).

The criminal defendant in *Polatis* was entitled to a hearing because he sufficiently and specifically alleged the existence of a plea offer containing essential terms—which counts he would plead guilty to and the range of punishment for having pled guilty. Further, the court was able to infer from his allegation that the plea offer was pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure because he alleged that the "sentencing range for the offer was 151-188 months." (2:10-cr-364, ECF No. 311 at 5.)

Here, unlike in *Polatis*, Mr. Jenks has not specifically alleged a plea offer containing an essential term—to which count or counts he would plead guilty. As discussed above, Mr. Jenks has alleged three separate plea offers. His allegations do not warrant holding a hearing.

His allegation that "[h]is attorneys told him in May, 2015 that the government had offered a plea to a fifteen year sentence" (ECF No. 1 at 10) is conclusory and insufficient to require this court to grant an evidentiary hearing to determine whether a plea offer was actually made. Mr. Jenks does not identify which of his attorneys told him this information. Nor does Mr. Jenks identify which prosecutor communicated this offer to his attorneys. Moreover, Mr. Jenks does not allege any specific details about this purported plea offer. He does not state to which

count the Government would have required him to plead guilty. Nor does he allege whether the offer would have required that the plea be pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure.

Mr. Jenks' allegation that "[i]n June of 2015, his attorneys informed him that the prosecution had reduced their offer to a ten-year deal" (ECF No. 1 at 10) is also insufficient to require this court to grant him a hearing. Mr. Jenks' allegation is supported somewhat by the email that he attached to his motion. (*See* ECF No. 1-7 at 2.) In that email the assigned prosecutor referenced a previous "possibility of a 10 year deal." (ECF No. 1-7 at 2.) But again, Mr. Jenks includes no details about the specifics of the alleged plea offer. He does not state to which count the Government would have required him to plead guilty. Nor does he allege whether the offer would have required that the plea be pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure. Mr. Jenks' allegation that there was a plea offer is conclusory.

The email that Mr. Jenks attached to his motion is also not sufficient evidence for this court to hold a hearing. As discussed above, the email supports the Government's representation that "[t]he United States never extended a plea offer to Jenks" (ECF No. 9 at 7) because the email lacks an essential term. Further, the prosecutor here, in his July 2015 email, never described his communication as an "offer." (*See* ECF No. 1-7 at 2.) This is in stark contrast to the prosecutor in *Polatis*, who, in her email to defense counsel in that case, described her communication as an offer. *See Polatis*, 2013 WL 1149842 at *2 ("As I mentioned, if Mr. Polatis is amenable, I would be willing to present this **offer** to our screening committee.") (bold added); *see id*. at *3 ("After Defendant's arraignment hearing on December 20, 2010 Ms. Travis sent Mr. Leigh an email referring to the motions to dismiss as evidence that Defendant's 'intentions have been to litigate this case with the United States rather than negotiate. As such, the **offer** is hereby

withdrawn.'"). One of the court's concerns in *Polatis* that ultimately weighed in favor of granting the defendant's motion was that a prosecutor's use of the term "plea offer," "to [a] layperson and non-specialist lawyer alike, would appear to refer to an offer that a Defendant can accept and rely on." *Polatis*, 2013 WL 1149842 at *10. That concern is not present here because Mr. Jenks has not pointed to any email communication from the Government making any "offer" to him. Instead, the email simply references the possibility of obtaining approval "to offer something." (ECF No. 1-7.) Thus, unlike in *Polatis*, the prosecutor here did not consider his email an offer.

To summarize, in order for Mr. Jenks to prevail on his second ground for relief, he must show that the Government offered him a plea deal. Mr. Jenks' allegations that the Government did offer him a plea deal are conclusory. Conclusory allegations of a plea offer are insufficient to warrant a hearing on his second ground for relief.

III. <u>Mr. Jenks Is Not Entitled to a Hearing on His Third Ground for Relief</u>

Mr. Jenks argues that "[t]rial counsel provided ineffective assistance of counsel by erroneously introducing inflammatory and prejudicial evidence against their own client by permitting their own witness to testify that Petitioner was incarcerated for over a year and to deny the existence of the alleged victim's exculpatory journals, and by calling in the defense case-in-chief the government hair expert, whose testimony undercut Petitioner's defense." (ECF No. 1 at 13–14.)  "In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). "Instead, *Strickland* asks whether it is 'reasonably likely' the

result would have been different." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Id*. At 112.

Mr. Jenks argues that "there is a reasonable probability of a different result" absent his counsel's alleged errors. (ECF No. 18 at 15.) Based on the overwhelming evidence of his guilt, this court holds that Mr. Jenks cannot meet his burden of demonstrating a substantial likelihood that the result of his trial would have been different. His third ground for relief fails.

IV.    Mr. Jenks Is Not Entitled to a Hearing on His Fourth Ground For Relief

Mr. Jenks argues that "trial counsel provided ineffective assistance by having petitioner sign a lengthy stipulation regarding the admission of physical evidence." (ECF No. 1 at 16.) In response, the Government argues that "Jenks failed to establish that his counsel's performance was deficient" and "also failed to establish how his counsel's advice to sign the stipulations 'reasonably likely' affected the result of the trial." (ECF No. 9 at 10.) The court agrees that Mr. Jenks cannot show that he was prejudiced because he cannot show a substantial likelihood that the result of his trial would have been different.

Conclusion

For the foregoing reasons, Mr. Jenks' Motion to Vacate and Set Aside Convictions and Sentence Under 28 U.S.C. § 2255 is DENIED.

Dated this 22nd day of January, 2020.

BY THE COURT:

CLARK WADDOUPS
United States District Judge

21